UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VICTOR LUGO,

                        Plaintiff,

v.                                                              3:16-CV-0746
                                                                (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

LACHMAN & GORTON LAW OFFICE                          PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 249
Fayetteville, NY 13066

U.S. SOCIAL SECURITY ADMIN.                          MARIA P. FRAGASSI
OFFICE OF REG'L GEN. COUNSEL – REGION II             SANTANGELO, ESQ.
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this Social Security action filed by Victor Lugo

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the

pleadings and Defendant's motion for judgment on the pleadings.[1]  (Dkt. Nos. 10, 11.)  For the

---

[1]       Plaintiff also submitted a reply brief responding to Defendant's motion for judgment on
the pleadings.  (Dkt. No. 13).  However, General Order #18, which outlines the procedures and
schedules applicable in Social Security disability appeals, does not allow for the filing of reply
briefs absent permission from the Court.  *See* General Order #18, at 2-3.  There is no indication
that Plaintiff sought permission either prior to or concurrent with the filing of his reply brief or
that any such permission was granted.  Additionally, Plaintiff filed this reply nearly two months
after Defendant filed her motion for judgment on the pleadings.  Under the circumstances, the

reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1960, making him 51 years old at the alleged onset date and 54 years old at both the date last insured and the date of the ALJ's decision. Plaintiff reported graduating high school, and the ALJ found he has past work as a handyman/laborer. Generally, Plaintiff alleges disability due to bad vision.

### B. Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on November 20, 2012. Plaintiff's application was initially denied on February 14, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a video hearing before ALJ John P. Ramos on June 3, 2014, and again at a supplemental hearing on January 15, 2015. On February 13, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 13-20.)[2] On May 12, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

---

Court declines to consider the reply brief and will constrain its review to the properly submitted pleadings.

[2] The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 15-20.) First, the ALJ found that Plaintiff was insured for benefits under Title II until September 30, 2014. (T. 15.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the application filing date. (*Id*.) Third, the ALJ found that Plaintiff's high myopia with myopic astigmatism and refractive amblyopia are severe impairments, while joint pain and depression are not severe. (T. 15-16.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (*Id*.) Specifically, the ALJ considered Listings 2.02 (loss of visual acuity), 2.03 (contraction of the visual fields in the better eye), and 2.04 (loss of visual efficacy). Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but he should avoid fine, close-up work involving small objects or print, but he retains sufficient visual acuity to work with larger objects and avoid workplace hazards." (T. 16-17.) Sixth, the ALJ found that Plaintiff is unable to perform his past relevant work as a handyman/laborer with the restrictions in the RFC. (T. 19.) Seventh, and finally, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff remains able to perform because the limitations in the RFC have little or no effect on the ability to perform the occupational base of unskilled work at all exertional levels. (T. 19-20.) The ALJ therefore concluded that Plaintiff is not disabled.

## D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff makes five arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the Agency failed to consider the opinion from treating optometrist Steven Goldenberg, O.D., that had been submitted for the first time to the Appeals

Council, asserting that consideration of this opinion would have altered the ALJ's reliance on the opinion from non-examining medical expert Jack Greenberg, M.D. (Dkt. No. 10, at 5-8 [Pl. Mem. of Law].)

Second, Plaintiff argues that the ALJ erred in affording little weight to the opinion from treating provider Sergei Petrochko, O.D., related to Plaintiff's being unable to drive due to his vision impairment. (Dkt. No. 10, at 9-10 [Pl. Mem. of Law].)

Third, Plaintiff argues that the ALJ erred in failing to provide proper clear reasons for finding he was not credible. (Dkt. No. 10, at 10-12 [Pl. Mem. of Law].)

Fourth, Plaintiff argues that the RFC finding is not supported by substantial evidence because the ALJ failed to account for limitations related to headaches, balance difficulties, and photophobia. (Dkt. No. 10, at 12-13 [Pl. Mem. of Law].)

Fifth, Plaintiff argues that the ALJ erred in failing to consult a vocational expert when making findings at Step Five. (Dkt. No. 10, at 13-15 [Pl. Mem. of Law].)

Generally, Defendant makes six arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the Appeals Council appropriately determined that the opinion from Dr. Goldenberg did not provide a basis for changing the ALJ's decision. (Dkt. No. 11, at 10-12 [Def. Mem. of Law].) Defendant argues that Plaintiff had no good reason for failing to submit this opinion prior to the ALJ's decision and that Plaintiff never alleged that Dr. Goldenberg's opinion was missing from the record before the ALJ. (Dkt. No. 11, at 10 [Def. Mem. of Law].) Defendant also argues that Dr. Goldenberg's statement is essentially cumulative of evidence that was already in the record and his conclusions are inconsistent with the totality of the evidence from the treating, examining, and non-examining ophthalmologists. (Dkt. No. 11, at 11-12 [Def. Mem. of Law].)

Second, Defendant argues that the ALJ properly relied on the opinion from medical expert Dr. Greenberg because he reviewed all of the evidence available at the time of the ALJ's decision prior to rendering that opinion. (Dkt. No. 11, at 12-15 [Def. Mem. of Law].)

Third, Defendant argues that the ALJ properly rejected Dr. Petrochko's opinion that Plaintiff was legally unable to drive due to his vision because the overall testing in the record did not show such poor visual acuity as Dr. Petrochko relied on for that opinion, noting also that an inability to drive would not prevent Plaintiff from performing all work. (Dkt. No. 11, at 15-16 [Def. Mem. of Law].)

Fourth, Defendant argues that the ALJ properly assessed credibility, citing to inconsistency with the objective medical evidence, the fact that Plaintiff had not seen an eye doctor for six months prior to the hearing, and his reported daily activities such as independent grooming and use of public transportation. (Dkt. No. 11, at 16-18 [Def. Mem. of Law].)

Fifth, Defendant argues that the ALJ properly assessed Plaintiff's symptoms when formulating the RFC because the medical evidence does not substantiate that Plaintiff's alleged headaches, balance difficulties, and photophobia, if present at all, imposed any functional limitations. (Dkt. No. 11, at 18-20 [Def. Mem. of Law].)

Sixth, Defendant argues that the ALJ properly relied on the Medical-Vocational Guidelines at Step Five because the non-exertional limitations did not significantly diminish Plaintiff's capacity for work at all exertional levels.  (Dkt. No. 11, at 20-22 [Def. Mem. of Law].)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d

856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the Commissioner Properly Considered and Weighed the Opinion Evidence According to the Regulations and the Weight of the Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 10-16 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating

physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). In general, "the weight assigned to a nonexamining source's opinions 'depends on the degree to which they provide supporting explanations for their opinions.'" *Nieves v. Astrue*, No. 3:08-CV-0311, 2009 WL 2601237, at *4 (N.D.N.Y. Aug 20, 2009) (quoting 20 C.F.R. § 416.927(d)(3)).

Plaintiff makes three arguments related to the Commissioner's treatment of the opinion evidence: (1) that the Appeals Council failed to properly consider the opinion from optometrist Dr. Goldenberg; (2) that the ALJ erred in affording only little weight to the opinion from optometrist Dr. Petrochko; and (3) that the ALJ should not have relied so heavily on the opinion from medical expert Dr. Greenberg. (Dkt. No. 10, at 6-10 [Pl. Mem. of Law].) Each of these arguments will be discussed in turn.

### 1.      Dr. Goldenberg's Opinion

On June 13, 2014, Dr. Goldenberg provided answers to two questions posed by Plaintiff's representative. (T. 413-14.) Dr. Goldenberg indicated that Plaintiff had a form of retinitis pigmentosa, "the symptoms of which include severe photophobia or sensitivity to light. Headaches may not be caused by the RP *per se*, but straining and squinting of the eyes due to photophobia can cause brow ache due to muscle fatigue." (T. 414.) Dr. Goldenberg also indicated that Plaintiff's visual acuity had been reduced to 20/150 in the right eye and 20/100 in

the left eye, which Dr. Goldenberg opined would "render it impossible for him to read small print in document form, and it would certainly disqualify him from reading a tape measure as he would have to do in carpentry." (*Id*.) Dr. Goldenberg reiterated that "this condition may not directly cause headaches, but the subsequent straining of the eyes could do so." (*Id*.)

Plaintiff submitted this opinion in the first instance to the Appeals Council after the ALJ had rendered a decision, noting in his appeal brief that he "did not see" this opinion in the file. (T. 6.) The Appeals Council denied review, noting that it considered Plaintiff's appeal brief and the "additional evidence listed on the enclosed Order of Appeals Council," but found that this information did "not provide a basis for changing the Administrative Law Judge's decision." (T. 2.) The list of exhibits that the ALJ considered consists of Plaintiff's appeal brief and the medical questionnaire from Dr. Goldenberg. (T. 4.)

Although Plaintiff's argument is somewhat confused, he appears to argue that the Appeals Council was incorrect in finding that Dr. Goldenberg's opinion would not have presented a reasonable possibility of changing the ALJ's decision. (Dkt. No. 10, at 6-8 [Pl. Mem. of Law].) Plaintiff argues more clearly that, had the ALJ had the opportunity to consider Dr. Goldenberg's opinion, he would have likely chosen to rely on it rather than on Dr. Greenberg's opinion. (Dkt. No. 10, at 6-8 [Pl. Mem. of Law].) However, these arguments are not persuasive or consistent with the evidence.

First, Plaintiff's assertion that the ALJ likely would have relied on Dr. Goldenberg's opinion over Dr. Greenberg's opinion because "Dr. Goldenberg examined and treated Plaintiff [] whereas Dr. Greenberg did not" is not persuasive. (Dkt. No. 10, at 7 [Pl. Mem. of Law].) There does not appear to be treatment records from Dr. Goldenberg in the record, making it impossible to determine the nature, extent, and frequency of his alleged treatment or to determine whether

his diagnosis and opinion are supported by his treatment observations.[3] There is a mention in a treatment note from Physician Assistant ("PA") Joseph Brunt on April 19, 2013, that Plaintiff had been told by Dr. Goldenberg that his vision was going to continue to deteriorate, but Plaintiff was unable to tell PA Brunt what diagnosis he had received from Dr. Goldenberg. (T. 409.) There is also a Department of Social Services form from March 20, 2013, in which Dr. Goldenberg noted that Plaintiff had visual acuity of 20/50 in the right eye and 20/100 in the left eye, and he opined Plaintiff was able to work with unspecified limitations related to his vision. (T. 337.) Plaintiff does not point to any other evidence that would establish that Plaintiff had a treatment relationship with Dr. Goldenberg. Consequently, there is no basis for reasonably concluding that the ALJ would have needed to assess Dr. Goldenberg as a physician who had specialized knowledge of Plaintiff's functioning that would be superior to Dr. Greenberg's thorough review of the record.[4]

---

[3] There are treatment notes from primary care physician Barry Goldberg, M.D. (T. 399-401.) However, given the clear difference in first name and credentials, there is no basis to assume that Dr. Goldberg and Dr. Goldenberg are the same person.

[4] At the first hearing on June 3, 2014, Plaintiff reported he had most recently seen Dr. Goldenberg of Ophthalmologic Associates of the Southern Tier for eye treatment and Plaintiff's representative indicated that the records previously requested from Dr. Goldenberg "must not have come in." (T. 69-70.) Plaintiff's representative specifically questioned whether the ALJ had received a March 6, 2013, report from Dr. Goldenberg, to which the ALJ responded that he had no evidence from Dr. Goldenberg's office at all. (T. 70-71.) The ALJ indicated he wanted Plaintiff's representative to provide Dr. Goldenberg's records and he allowed two weeks to submit those records, noting he would grant additional time if requested. (T. 71.) Plaintiff's representative noted that "I know we got some of the records in. I assume – and since I have it in – well, I will get it to you judge. That's a mistake." (*Id.*) This discussion at the hearing indicates that the ALJ specifically instructed Plaintiff to provide records from Dr. Goldenberg when he recognized the need to review that treatment, yet Plaintiff's representative failed to submit any records or request assistance from the ALJ to obtain those records. In fact, Plaintiff did not submit any evidence from Dr. Goldenberg other than the 2013 statement indicating Plaintiff was able to work with unspecified visual limitations until the appeal to the Appeals Council. Given these facts, it would not be reasonable to place the blame on the ALJ for the

Second, Plaintiff argues that statements by Dr. Greenberg regarding the utility of conducting his own refractive eye testing as the best way to get a concrete picture of Plaintiff's visual abilities indicated that Dr. Greenberg found review of the treatment records to be an insufficient basis to form an opinion. (Dkt. No. 10, at 7 [Pl. Mem. of Law].) This is not an accurate interpretation of Dr. Greenberg's testimony. Dr. Greenberg was discussing how he conducted the process of assessing patients who were referred to him for treatment and diagnosis when he indicated the importance of personal examination, not whether he would be unable to render a competent opinion on a claimant's functioning based on a review of medical evidence. (T. 36-37.) Although Dr. Greenberg reasonably stated that it would have been easier for him to provide an opinion had he conducted his own vision testing on Plaintiff, that does not suggest that Dr. Greenberg found the records before him to be an insufficient basis for forming an opinion. Additionally, the ALJ had all of Dr. Greenberg's testimony before him when rendering his decision and did not find the statements Plaintiff points out to be factors detracting from the reliability of that opinion. Given that there is no actual testing from Dr. Goldenberg—only the visual acuity values he reports in his opinion without any indication of when or how they were taken—Plaintiff's assertion that the ALJ likely would have relied on Dr. Goldenberg as a source who personally tested Plaintiff is unsupported and unavailing.

Third, Plaintiff argues that Dr. Greenberg's opinion is insufficient because he did not discuss whether squinting or straining the eyes can cause headaches, a topic addressed in Dr.

---

failure to obtain Dr. Goldenberg's records—if they exist—or to find that remand is necessary for a failure to develop the record. After all, Plaintiff bears the ultimate burden of providing evidence to prove disability and the ALJ provided him ample opportunity to do so in this case. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (finding that the burden to prove disability and provide evidence to show particular impairments lies with the plaintiff).

Goldenberg's opinion. (Dkt. No. 10, at 7 [Pl. Mem. of Law].) While this is technically true, Plaintiff's representative did ask Dr. Greenberg at the hearing whether any of Plaintiff's diagnosed conditions could cause headaches, to which Dr. Greenberg responded in the negative. (T. 34.) When Plaintiff's representative further questioned whether an activity such as prolonged reading with his eye conditions would cause headaches, Dr. Greenberg answered, "[n]o, not necessarily. No. That's not associated necessarily with these diagnoses." (T. 34-35.) Consequently, while Dr. Greenberg did not specifically address the issue of squinting or straining of the eyes, he did provide affirmative testimony that the Plaintiff's diagnosed conditions would not necessarily cause headaches even with focused use of the eyes such as with prolonged reading. As there was no evidence that eye strain would present even the possibility of headaches other than Dr. Goldenberg's conditional statement that was based on a diagnosis that no other physician found to be present, there is no reason to believe that any lack of specific discussion of this issue by Dr. Greenberg would cause the ALJ to alter his findings if presented with Dr. Goldenberg's opinion.

Fourth, Plaintiff argues that Dr. Goldenberg's 2014 opinion that Plaintiff could not read small print conflicted with Dr. Greenberg's opinion, and that Dr. Goldenberg's opinion reflects a more current assessment of functioning than the 2012 vision testing Dr. Greenberg relied on for his finding. (Dkt. No. 10, at 7 [Pl. Mem. of Law].) However, Plaintiff's argument ignores the fact that Dr. Greenberg reviewed not only the examination from 2012, but also treatment records up to 2014, and that he concluded the ability to read "J3" size print was generally consistent with the totality of the evidence. Additionally, Plaintiff also ignores that the ALJ found Plaintiff needed to avoid close-up work involving small objects or print, something that renders irrelevant the question of whether Plaintiff could read J3 print specifically. Since the ALJ had already

adopted limitations related to reading small print that were similar to Dr. Goldenberg's opined limitation, there is no indication that a lesser reliance on Dr. Greenberg's opinion due to consideration of Dr. Goldenberg's opinion would have resulted in a change in the ALJ's findings.

Fifth, Plaintiff argues that the inability to consider Dr. Goldenberg's opinion prevented the ALJ from considering symptoms of photophobia, noting also that Dr. Greenberg did not address photophobia. (Dkt. No. 10, at 7 [Pl. Mem. of Law].) There is a simple explanation as to why neither Dr. Greenberg nor the ALJ considered the effects of photophobia: there was no evidence that Plaintiff experienced it other than his testimony at the hearing. It does not appear that he reported it as a symptom to his physicians, and no physician noted any signs of photophobia on examination. The ALJ is not required to credit a claimant's subjective complaints where there is no evidence to support those complaints. There are no treatment records from Dr. Goldenberg to indicate whether he ever noted reports or signs of photophobia, and his statement regarding photophobia in his opinion is in relation to symptoms of a diagnosis of retinitis pigmentosa. (T. 414.) However, other sources indicated that Plaintiff did not have retinitis pigmentosa, including Dr. Greenberg and treating ophthalmologist Dr. Chauldhri. (T. 42-44, 392.) As there is no evidence to support either Dr. Goldenberg's diagnosis or the associated symptom of photophobia, there is no reasonable expectation that consideration of Dr. Goldenberg's statements regarding photophobia would have altered the ALJ's findings.

Sixth, Plaintiff argues that Dr. Greenberg did not have a complete record to consider because he did not have the opportunity to review Dr. Goldenberg's statement and therefore his opinion was not reliable. (Dkt. No. 10, at 8 [Pl. Mem. of Law].) However, as already noted throughout the discussions of Plaintiff's other arguments, Dr. Goldenberg's opinion was for the

14

most part speculative and inconsistent with the other evidence. There is nothing that would suggest that consideration of that opinion would have altered Dr. Greenberg's opinion. Additionally, since the ALJ found Plaintiff needed to avoid working with small objects and print, there would have been no resulting change in the ALJ's findings even if Dr. Greenberg had considered and accepted Dr. Goldenberg's opinion that Plaintiff was unable to read fine print. (T. 16-17.)

Additionally, all of Plaintiff's arguments presuppose that Dr. Goldenberg's opinion expresses limitations beyond what the ALJ accounted for in the RFC, but that is not the case. As already discussed, the ALJ included a limitation for avoidance of close-up work involving small objects or print, a limitation that is consistent with Dr. Goldenberg's opinion that Plaintiff is unable to read small print. (T. 16-17, 414.) This is the only limitation that Dr. Goldenberg's opinion actually contains. The remainder of the "limitations" Plaintiff asserts he opined are in fact little more than unsupported speculations of possible symptoms that could result from eye strain, and even those speculations are based on a diagnosis that no other physician in the record agreed was present. (T. 414.) Despite Plaintiff's implied assertions that Dr. Goldenberg's opinion suggested greater limitations or even disabling symptoms, there is no evidence to support that interpretation.

Giving Plaintiff the benefit of the doubt, his arguments could also be read to vaguely assert that the Appeals Council failed to properly consider Dr. Goldenberg's opinion at all. (Dkt. No. 10, at 6 [Pl. Mem. of Law].) This argument is likewise unpersuasive. "Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Lesterhuis v. Colvin*, 805 F.3d 83,

86 (2d Cir 2015) (quoting 20 C.F.R. § 404.970(b)). "The Appeals Council is obligated to consider 'new and material evidence.'" *Stratton v. Colvin*, 51 F. Supp. 3d 212, 218 (N.D.N.Y. 2014) (citing 20 C.F.R. § 404.970(b)). "New evidence is 'material' if it is: '(1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative.'" *Stratton*, 51 F. Supp. 3d at 218 (quoting *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)). "'The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'" *Id.* (quoting *Pollard*, 377 F.3d at 193) (alteration in original).

This Court has remanded where the Appeals Council fails to discuss a physician's opinion or "fails to provide the type of explanation required by the treating physician rule when denying Plaintiff's request for review." *See Djuzo v. Colvin*, No. 5:13-CV-0272, 2014 WL 5823104, at *4-5 (N.D.N.Y. Nov. 7, 2014); *Sears v. Colvin*, No. 8:12-CV-0570, 2013 WL 6506496, at *6 (N.D.N.Y. Dec. 12, 2013); *Davidson v. Colvin*, 1:12-CV-0316, 2013 WL 5278670, at *7-8 (N.D.N.Y. Sept. 18, 2013). However, the facts in this case are distinguishable from those where remand has been found to be warranted. In *Djuzo*, the Court found that the Appeals Council's lack of rationale related to a treating physician's opinion was not harmless error because that physician's opinion, if considered, could be dispositive to the disability determination. *Djuzo*, 2014 WL 5823104, at *4-5. By contrast, Dr. Goldenberg's prohibition on reading small print was consistent with the RFC and his opinion did not contain any other indications of specific work-related limitations that could be reasonably construed as imposing greater restrictions. In *Sears*, the Court found the Appeals Council's lack of rationale was insufficient because the new evidence submitted included an exhibit that was also filed with the claimant's subsequent application and which was found to be supportive of disability in the

subsequent application. *Sears*, No. 8:12-CV-0570, 2013 WL 6506496, at *6. Such a telling

indication of disability does not exist in this case. In *Davidson*, the Court found the Appeals

Council's lack of rationale was insufficient because a consultative examination containing

similar findings as in the newly submitted treating physician's opinion created a reasonable

possibility that the ALJ would have reached a different result. *Davidson*, 2013 WL 5278670, at

*7. By contrast, in this case, Dr. Goldenberg's limitations related to small print was consistent

with the ALJ's findings, while the rest of his statement was speculative and contrary to the

evidence from other treating physicians and medical expert Dr. Greenberg. The content of Dr.

Goldenberg's opinion and the lack of evidence supporting his statements regarding retinitis

pigmentosis, headaches, and photophobia make this case sufficiently distinguishable from others

where a lack of Appeals Council explanation warranted remand.

Even though the Appeals Council did not provide a specific explanation as to their

reasons for finding Dr. Goldenberg's opinion was not material, a review of the evidence as a

whole supports their conclusion such that remanding for a discussion of this opinion would serve

no legitimate or useful purpose. As already discussed, the speculative nature of Dr.

Goldenberg's opinion, the inconsistency of the diagnosis asserted with the evidence from the

other treating physicians and Dr. Greenberg, the lack of corroborating treatment records from Dr.

Goldenberg, and the consistency of the opined inability to read fine print with the RFC

restriction for avoidance of close-up work involving small objects or print all suggest that any

lack of specificity in the Appeals Council's discussion of how it considered Dr. Goldenberg's

opinion would at most be harmless error. *See Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810

(W.D.N.Y. 2016) (noting that an error is considered harmless where proper consideration of the

physician's opinion would not change the outcome of the claim) (citing *Zabala v. Astrue*, 595

F.3d 402, 409 (2d Cir. 2010)); *Camarata v. Colvin*, No. 6:14-CV-0578, 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying the request for remand because application of the correct legal standard would not change the outcome); *Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (finding harmless error where the ALJ improperly discounted the treating physician's opinion, but still included the opined limitations from that opinion in the RFC, so remand would serve no purpose). There is no evidence to suggest that more specific consideration or even adoption of the concretely-defined limitation for no reading of small print would have altered the ALJ's conclusions.

For all the above reasons, even if the Appeals Council failed to provide a proper explanation of their conclusions regarding Dr. Goldenberg's opinion, such error would be harmless because substantial evidence supports the finding that consideration of this opinion would not have presented a reasonable possibility of changing the ALJ's decision. Remand is not warranted on this basis.

### 2. Dr. Petrochko's Opinion

On February 21, 2012, Dr. Petrochko indicated that Plaintiff had a diagnosis of "very high myopia" and atrophy of the fundus that resulted in lifetime vision difficulties with a poor prognosis. (T. 302-03.) Dr. Petrochko indicated that Plaintiff had 20/2000 distance vision without correction, and 20/100 in the right eye and 20/100+ in left eye with correction. (T. 303.) Dr. Petrochko also noted Plaintiff had near vision at the J3 level. (*Id.*) Dr. Petrochko opined that Plaintiff was "not legal to drive" due to his vision, noting that he "is not blind [but] some jobs will be limited." (T. 305-06.) The ALJ found Dr. Petrochko's opinion regarding driving to be incorrect based on the contrary evidence provided by Dr. Greenberg. (T. 18.)

Plaintiff argues that the ALJ erred in rejecting Dr. Petrochko's opinion that Plaintiff was not able to legally drive. (Dkt. No. 10, at 9-10 [Pl. Mem. of Law].) Plaintiff concurrently argues that the ALJ was not entitled to rely on Dr. Greenberg's contrary statement that other visual acuity assessments in the record had shown that Plaintiff's distance vision was within the range where a physician could submit an assessment to allow him to drive under New York State law because Dr. Greenberg, as a medical expert, was not qualified to testify as to legal matters. (*Id*.) Plaintiff's argument is not persuasive. As an initial matter, Plaintiff's argument that Dr. Greenberg was not qualified to offer an opinion as to whether Plaintiff met the legal criteria to drive is inconsistent with his argument that the ALJ should have relied on a statement from Dr. Petrochko that Plaintiff did not meet the legal criteria to drive; both are medical rather than legal sources and if one is not qualified to offer such an opinion, then neither of them is. However, given Dr. Greenberg's extensive experience and training as a ophthalmologist and his evident familiarity with the New York State law related to the vision required for driving, his testimony on this matter is not improper. (T. 157.) Rather than being a strictly legal opinion, it is an opinion based on his own experience as a medical professional that someone with the visual acuity Plaintiff demonstrated might be able to pass a vision test for modified driving privileges. Additionally, while Dr. Petrochko's opinion might have been correct given the more limited visual acuities he personally assessed, his opinion does not consider the range of visual acuity values throughout the record. As Dr. Greenberg noted in his testimony, the assessed visual acuity values varied significantly throughout the record due to factors such as the nature of Plaintiff's specific eye impairment and the physician's subjective interpretations. (T. 48.) Unlike Dr. Petrochko, Dr. Greenberg had the opportunity to review the range of visual acuity values and form an opinion based on all the evidence. It was therefore not unreasonable for the

ALJ to rely on Dr. Greenberg's opinion that Plaintiff would qualify to drive under modified vision requirements rather than on Dr. Petrochko's opinion that he was legally unable to drive. After all, the ALJ is required to base his findings on a consideration of all the relevant evidence.

Additionally, whether or not Plaintiff can drive as a result of his vision is not an issue that is dispositive of the question of whether he is disabled, so whether or not the ALJ accepted this portion of Dr. Petrochko's opinion has no bearing on the ultimate outcome. Nothing in Dr. Petrochko's opinion indicates that Plaintiff is otherwise unable to work. Consequently, even if the ALJ did commit an error in rejecting Dr. Petrochko's statement that Plaintiff was legally unable to drive, that error would be harmless at best. *See Cottrell*, 206 F. Supp. 3d at 810; *Camarata*, 2015 WL 4598811, at *16; *Ryan*, 650 F. Supp. 2d at 217. Remand is not warranted on this basis.

### 3.    Dr. Greenberg's Opinion

In an interrogatory from July 11, 2014, Dr. Greenberg noted that, after a review of the record, he concluded Plaintiff had diagnoses of high myopia with myopic astigmatism and refractive amblyopia associated with high myopia. (T. 382.) Dr. Greenberg opined that the evidence did not show that Plaintiff's various eye impairments met or equaled the requirements of a listed impairment. (T. 383.) Dr. Greenberg opined that Plaintiff was "extremely glasses dependent," resulting in "moderate disability" with best corrected vision. (T. 385.) He opined that commercial driving was not recommended but indicated Plaintiff might pass a vision test for driving with restrictions on a non-commercial basis. (*Id*.) Dr. Greenberg opined Plaintiff would have trouble with fine details, but he would be able to recognize shapes. (*Id*.) In an opinion form, Dr. Greenberg opined that Plaintiff could avoid ordinary hazards in the workplace, read ordinary newspaper and book print, view a computer screen, and determine differences in shape

and color of small objects, but he could not read very small print. (T. 387.) Dr. Greenberg testified on January 13, 2015, that consideration of more recent evidence had not changed his previous opinion. (T. 32.) The ALJ afforded his opinion significant weight because it was consistent with the consultative examiner's opinion and because Dr. Greenberg had the opportunity to review all the evidence in the record.

Many of the reasons that Plaintiff objects to the significant weight the ALJ afforded to Dr. Greenberg's opinion have already been addressed and rejected above in the section regarding Dr. Goldenberg's opinion. Notably, although Dr. Greenberg did not treat or examine Plaintiff, he did review all the records prior to offering an opinion and the ALJ was entitled to rely on his opinion if it was consistent with the evidence. *See Christy v. Comm'r of Soc. Sec.*, No. 5:13-CV-1552, 2015 WL 6160165, at *10 (N.D.N.Y. Oct. 20, 2015) ("[A]n ALJ may rely on the opinions of non-examining medical experts.") (citing *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010)); *Henry v. Astrue,* 32 F. Supp. 3d 170, 181 (N.D.N.Y. 2012) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants . . . [s]uch reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants are supported by the weight of the evidence.") (citations omitted). Plaintiff's citation to alleged inconsistencies with "records showing balance problems and headaches" are not persuasive because the only evidence of these symptoms are Plaintiff's subjective reports, which the ALJ properly declined to credit, as will be discussed further in another section of this Decision and Order. Nor is Dr. Greenberg's opinion materially inconsistent with Dr. Goldenberg's indication that Plaintiff was unable to read small print, as Dr. Greenberg opined a similar limitation. (T. 387.) Additionally, Dr. Greenberg's opinion is generally consistent with the opinion of consultative examiner Gilbert

Jenouri, M.D., who opined that Plaintiff was restricted from activity requiring fine visual acuity. (T. 330.) Plaintiff fails to indicate how the ALJ's reliance on Dr. Greenberg's opinion in any way produced an RFC finding that was inconsistent with the overall evidence in the record. For these reasons, the ALJ's reliance on Dr. Greenberg's opinion is supported by proper rationale and substantial evidence, and remand is not warranted on this basis.

### B.        Whether the Credibility Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 16-18 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a

claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

The ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his impairments were not entirely credible. (T. 18.) To support this finding, the ALJ cited to the lack of vision testing in the six months prior to the hearing, his documented corrected visual acuity and right eye visual efficacy, his ability to live alone and use public transportation, and his sporadic work history. (*Id.*)

Plaintiff argues that the ALJ's citation to daily activities such as Plaintiff's ability to live alone and use public transportation are not evidence that his allegations of an inability to work lack credibility because many blind people are able to perform the same tasks but they are not able to avoid hazards and determine differences in shapes and colors of objects. (Dkt. No. 10, at 11 [Pl. Mem. of Law].) However, as Defendant notes, Plaintiff was not blind and the overall evidence does not suggest that Plaintiff's vision was so limited that he was unable to avoid hazards and distinguish between objects. (Dkt. No. 11, at 17-18 [Def. Mem. of Law].) The ALJ was required to consider Plaintiff's daily activities when assessing credibility and he properly did so here. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016). The relevant issue is whether Plaintiff retained sufficient visual abilities with corrective measures to enable him to perform work activity, and his ability to live alone and take public transportation, along with other factors such as the visual acuity testing, suggest that the ALJ reasonably found the extent of Plaintiff's allegations of visual limitations to be less than fully credible.

Notably, Plaintiff does not argue that the ALJ improperly relied on the results of objective vision testing that showed he had a corrected bilateral visual acuity as good as 20/50. (T. 18, 329, 390.)  The ALJ is correct that these results do not suggest the extent of visual limitations that Plaintiff alleges.  Notably, this is the same level of corrected visual acuity that Dr. Greenberg and Dr. Jenouri considered when rendering their opinions.  (T. 33, 329.)

The ALJ also cited to Plaintiff's poor work history, noting that it suggested his present unemployment was due to a lack of attachment to the workforce rather than his impairments.  (T. 18.)  The ALJ is entitled to consider a claimant's work history when assessing credibility, though it is only one factor out of many and not by itself dispositive.  *See Stroud v. Comm'r of Soc. Sec.*, No. 13-CV-3251, 2014 WL 4652581, at *11 (S.D.N.Y. Sept. 8, 2014) ("'A claimant's unexplained poor work history may negatively impact on the claimant's credibility.'") (quoting *Marine v. Barnhart*, No. 00-CV-9392, 2003 WL 22434094, at *4 (S.D.N.Y. Oct. 24, 2003)); *Ellis v. Comm'r of Soc. Sec.*, No. 3:11-CV-1205, 2012 WL 5464632, at *12 (N.D.N.Y. Sept. 7, 2012) ("Although work history may be deemed probative of credibility, it is one of the many factors to be considered.") (citing *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012); *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011)).

Lastly, Plaintiff continues to cite to headaches and difficulties with balance, but does not point to any evidence which substantiates these symptoms other than his own subjective reports. (Dkt. No. 10, at 11-12 [Pl. Mem. of Law].)  The ALJ is not required to accept a claimant's subjective allegations in the absence of evidence supporting those allegations, and the regulations explicitly state that a finding of disability cannot be based on a claimant's subjective reports alone.  *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); *Crysler v. Astrue*, 563 F. Supp. 2d 418,

439 (N.D.N.Y. 2008) (noting that the ALJ is not required to blindly accept a claimant's subjective testimony, but rather has the discretion to evaluate that testimony).

Notably, even if some of the ALJ's reasons for discounting Plaintiff's credibility are erroneous or unsupported, he has still provided other valid reasons that indicate his overall credibility finding should be upheld. *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 206-07 (N.D.N.Y. 2012) (finding harmless error in the ALJ's adverse inference of a failure to pursue treatment where the credibility analysis as a whole was supported by substantial evidence); *see also Taylor v. Colvin*, No. 3:14-CV-0928, 2016 WL 1049000, at *8-9 (N.D.N.Y. Mar. 11, 2016) (noting that the ALJ's failure to inquire into the reasons for gaps in mental health treatment prior to using those gaps against the plaintiff's credibility was harmless where the ALJ provided other reasons supported by substantial evidence to support the overall credibility determination). Because the ALJ has provided multiple valid reasons, particularly inconsistency with the objective medical evidence and vision testing, this Court finds the credibility finding is supported by substantial evidence. *See Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) ("We have no reason to second-guess the credibility finding in this case where the ALJ identified specific record-based reasons for the ruling."). Remand is not warranted on this basis.

### C.      Whether the RFC is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 18-20 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

Residual functional capacity is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee*

*v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and] symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 5:11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).

Plaintiff argues that the RFC finding is deficient because the ALJ failed to account for Plaintiff's reports of headaches, photophobia, and difficulties with balance. (Dkt. No. 10, at 12-13 [Pl. Mem. of Law].) However, as previously discussed, the only evidence supporting these symptoms was Plaintiff's own self-reports. No physician observed any objective signs to denote the presence of headaches, loss of balance, or photophobia as a result of Plaintiff's vision impairment. Again, disability cannot be established based solely on a claimant's subjective reports, but rather must be supported by objective evidence. *See* 20 C.F.R. §§ 404.1508, 404.1529(a), 416.908, 416.929(a). Additionally, as Defendant notes, even if the ALJ was to accept Plaintiff's subjective reports of these symptoms, there is no evidence in the record suggesting they caused additional work-related limitations. (Dkt. No. 11, at 18-20 [Def. Mem. of Law].) Plaintiff points to the fact that Dr. Jenouri included imbalance and headaches in the diagnosis section of his report, but fails acknowledge that Dr. Jenouri, even when considering these reported symptoms, still found that Plaintiff's only limitation was a restriction on his ability to perform fine visual acuity tasks. (T. 330.) It also appears that Dr. Jenouri included these symptoms in the list of diagnoses based solely on Plaintiff's reports, as his examination did

not reveal any balance difficulties or indication of headaches. (T. 329.) In terms of photophobia, the only mention of this symptom is in Dr. Goldenberg's later-submitted opinion, and it was a speculative symptom attributable to a diagnosis of retinitis pigmentosis that other physicians had explicitly rejected. The evidence does not support that Plaintiff's symptoms of headaches, loss of balance, and photophobia caused any limitation on his functioning, even if Plaintiff experienced them as alleged. Because there is no objective evidence to substantiate these symptoms or limitations resulting from them, the ALJ did not err in failing to consider them more fully or in failing to account for them in the RFC. Remand is not warranted on this basis.

**D.    Whether the Step Five Finding is Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 20-22 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert*." Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). "However, the 'mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the [Medical-Vocational] guidelines.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603). "A non-exertional impairment 'significantly limits a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in

other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 605-06).

Plaintiff argues that the ALJ was required to obtain testimony from a vocational expert based on the non-exertional impact of symptoms such as loss of balance, headaches, and photophobia. (Dkt. No. 10, at 14-15 [Pl. Mem. of Law].) However, as already discussed previously, there was no objective evidence supporting these symptoms or establishing limitations resulting from them, and the ALJ was consequently not required to account for them in the RFC or consider them at Step Five.

In discussing the impact of Plaintiff's vision-related limitations, the ALJ noted that a substantial number of jobs would remain across all exertional levels since Plaintiff retained sufficient visual acuity to handle and work with large objects and to avoid ordinary hazards in the workplace, citing to SSR 85-15, 1985 WL 56857 (1985) and SSR 96-9p, 1996 WL 374185 (July 2, 1996). SSR 85-15 states the following:

> As a general rule, even if a person's visual impairment(s) were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels. However, a finding of disability could be appropriate in the relatively few instances in which the claimant's vocational profile is extremely adverse, e.g., closely approaching retirement age, limited education or less, unskilled or no transferable skills, and essentially a lifetime commitment to a field of work in which good vision is essential.

SSR 85-15, 1985 WL 56857 at *8.

Plaintiff does not challenge that SSR 85-15 is applicable in this situation, but rather asserts that he has an "extremely adverse vocational profile" as discussed in that Ruling. (Dkt. No. 10, at 15 [Pl. Mem. of Law].) This argument is unavailing. Although Plaintiff attempts to stretch the facts to accommodate his argument, they do not fit the frame for an extremely adverse vocational profile. Plaintiff was 54 years old at the date of the ALJ's decision and was therefore at most classified as a person closely approaching advanced age during the relevant period, not a person closely approaching retirement age. (T. 19-20); *see also* 20 C.F.R. § 404, Subpart P, Appendix II. Plaintiff notes correctly that he has a high school education, but fails to acknowledge that this is greater than the limited education contemplated for an extremely adverse vocational profile. (T. 19, 252); *see also* 20 C.F.R. § 404.1564(b)(3), 416.964(b)(3). Since the wording and structure of SSR 85-15 seem to indicate that all four of the noted criteria need to be met in order for a claimant to have an extremely adverse vocational profile— particularly the notation that this is found in relatively few instances—Plaintiff's failure to demonstrate these first two criteria strongly suggest he does not have an extremely adverse vocational profile and would remain able to perform a significant number of jobs despite his limitations in working with small objects or print.

Because SSR 85-15 provides sufficient vocational evidence to support the ALJ's Step Five finding and the ALJ expressly relied on its guidance when determining whether the visual limitations imposed a significant restriction on the occupational base of work in the national economy, there was no need for the ALJ to consult a vocational expert. Remand is not warranted on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is

**<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated:  September 11, 2017
          Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge